## B. F. Bachman, Administrator, Appellee, v. Roy Wilkins, Administrator, Appellant.

1. EXECUTORS AND ADMINISTRATORS, § 532*—*when interest charged against administrator conclusive on appeal.* Where the amount of interest chargeable against an administrator to collect is fixed by stipulation in the lower court, it cannot be questioned on appeal.

2. EXECUTORS AND ADMINISTRATORS, § 559*—*when administrator to collect deprived of commissions by failure to deliver property to successor.* An administrator to collect, *held* not to have neglected or refused to turn personalty over to his successor on demand, so as to deprive him of his right to commissions.

3. EXECUTORS AND ADMINISTRATORS, § 561*—*amount of commissions of administrator to collect.* An award of $2,000 as commissions to an administrator to collect, *held* not excessive under the circumstances of the case.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

4. EXECUTORS AND ADMINISTRATORS, § 526*—*when allowance of attorneys' fees not excessive.* An allowance of $1,800 as attorneys' fees to an administrator to collect, *held* not excessive.

5. EXECUTORS AND ADMINISTRATORS, § 558*—*when costs of proceeding payable from estate.* An order requiring the payment from an estate of the costs of a proceeding pertaining to the allowance of commissions and attorneys' fees to an administrator to collect, *held* not erroneous.

Appeal from the Circuit Court of Marion county; the Hon. THOMAS M. JETT, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed May 1, 1915.

KAGY & VANDERVORT, for appellant.

BUNDY & WHAM, C. H. HOLT and E. D. TELFORD, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

About July 1, 1908, Demalian Justice was appointed administrator of the estate of Sea Bird Wilkins, deceased. Shortly thereafter an appeal was taken from the order appointing him, and pending the litigation B. F. Bachman was appointed administrator to collect, of said estate. Upon his appointment, Justice turned over to him $6,101.36 cash, notes and accounts amounting to something over $25,000, and certain property appraised at $2,118.15. On appeal it was finally decided that Justice had no right to administer on said estate and thereafter on March 16, 1912, Roy Wilkins was appointed administrator of said estate by the County Court. This appointment was contested by the public administrator but was affirmed by the Circuit Court and by the Appellate Court (*Bundy v. Wilkins*, 183 Ill. App. 560), and later a petition for writ of certiorari was denied by the Supreme Court, making the opinion of Appellate Court final. (See also, for previous history of case, *Justice v. Wilkins*, 251

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Ill. 13, reversing 158 Ill. App. 504.) Thereafter on January 13, 1914, the records and files were certified to the County Court of Marion county in order that said administrator might proceed with the duties of his office, and on January 15th, Roy Wilkins as such administrator, whom we shall hereafter designate as appellant, made a written demand on B. F. Bachman the administrator to collect, the appellee here, that he turn over to appellant all the money and property of Sea Bird Wilkins, deceased, which had come to his hands or possession. Appellee failed to turn over any money in response to this demand, and on February 2, 1914, a second demand of like import was served upon him, and about this time appellee paid to appellant the sum of $10,000, but retained the balance of the money belonging to the estate. Later, on February 24th appellant served a third notice on appellee in which he demanded the balance of the money due. Appellee refused to pay over this balance unless appellant would agree to allow appellee to retain the amount claimed by him as commissions and for his attorneys' fees. No agreement having been reached upon these questions, appellee on March 11, 1914, filed a petition in said County Court asking that his attorneys' fees and commissions be fixed by the court. On April 9th the case was heard and appellee's commissions fixed at $1,200, and his attorneys' fees at $2,000, and from the order fixing these amounts an appeal was taken to the Circuit Court by the administrator, Roy Wilkins, and others interested in the estate. On April 15, 1914, appellee filed his final report as administrator to collect in the County Court, showing the amounts received and paid out by him from his appointment until the filing of said report. This report showed he had received $23,870.98, and had paid out, including the $10,000 theretofore paid appellant, the sum of $15,577.37, leaving a balance in his hands of $8,293.61. Among other items, for which he took.

credit in his report as having been paid out, were the $1,200 allowed him as commissions and the $2,000 allowed for attorneys' fees. A few days later this report was approved and thereupon appellee paid said sum of $8,293.61 to appellant but the administrator, Roy Wilkins, and others interested took an appeal from the order approving said report to the Circuit Court. Objection filed to appellee's final report was that he had failed to pay over to appellant as administrator of said estate the personal property and assets in his hands on demand as required by statute, and had thereby forfeited all right and claim to commissions and attorneys' fees; also that appellee had taken possession of a large sum of money, to wit, the sum of $20,000, which he had held on deposit in banks bearing interest for more than six years, and that no account for interest so received had been made by him.

Two separate appeals were prosecuted from the order of the County Court approving appellee's report, one from the order fixing the fees of his attorneys and the other from the order fixing the commission of the administrator to collect, but they were tried in the Circuit Court at the same time and practically as one case. On the hearing, the Circuit Court entered an order finding that appellee should be charged with $600 interest received by him, and that he should be credited with $1,200 for his fees and commissions as administrator, and the court also found that he was entitled to retain $1,800 for his attorneys' fees and that the costs of suit should be paid in due course of administration. The amount of $600 for interest, which the court found should be charged against appellee, was agreed upon and made a matter of stipulation between the parties. Two separate orders, however, were entered by the Circuit Court, one relating to appellee's commissions and the interest received by him, and the other relating to the attorneys' fees which he was allowed to retain. From

each of these orders an appeal was taken to this court, but the records filed here appear to be identical, except as to the two orders of the Circuit Court referred to, and the same briefs are filed in each case, so that for the purpose of convenience, the two appeals have been consolidated in this court and will be treated as one.

Some question is raised by appellant in his brief, concerning the interest item charged against appellee, but as the matter of interest was settled by stipulation in the Circuit Court, as above stated, it cannot be permitted to be raised on this appeal. It would appear from the proofs that the amount of $1,200 allowed appellee for his commissions for caring for an estate the size of this one for some five and one-half years, and doing all the work necessary to make the collections of the money due it, was a reasonable charge, especially in view of the fact that he was himself charged with $600 for interest on the fund held by him; but appellant contends that he was in fact not entitled to make any charge for his commissions or receive anything therefor, for the reason that he had not delivered over the money and property in his hands to his successor when demand was made therefor. In support of this claim he refers to section 17 of chapter 3 of the Revised Statutes (J. & A. ¶ 65), which provides that it shall be the duty of an administrator to collect, "to deliver, on demand, all property and money of the deceased which shall have come to his hands or possession (saving such commission as may be allowed by the Court), to the person or persons obtaining such letters; and in case any such collector shall refuse or neglect to deliver over such property or money to his successor, when legal demand is made therefor, such person so neglecting or refusing shall be liable to pay twenty per cent. over and above the amount of all such property or money as comes to his hands by virtue of his administration, and is not paid or delivered over as aforesaid, and shall forfeit all

claim to any commission for collecting and preserving the estate.'' Appellant also contends that because appellee refused to turn over the estate promptly on demand he was guilty of wilful default in his conduct in the administration of the estate, and that compensation should therefore be refused to him. Our attention is called by appellant to the case of *Whittemore v. Coleman,* 239 Ill. 450, where it is held that an administrator is not entitled to compensation where he has been guilty of a flagrant disregard of duty in connection with the administration of the estate of which he has had charge. He also refers to the case entitled *In re Estate of George Wincox,* 186 Ill. 445, where it was held that under the section of the statute above referred to, an administrator to collect, who neglected to deliver and pay over the funds of the estate to his successors upon demand as required by statute, had forfeited all claim to his commissions. But in that case the administrator appears to have wrongfully collected the funds and misappropriated them.

The proofs in this case do not show that appellee Bachman was guilty of any disregard of his duty or any maladministration of his office which would prevent him from claiming and being rightfully allowed his reasonable commissions and attorneys' fees as such administrator. He in fact appears to have been specially diligent in collecting and securing assets of the estate and in protecting and caring for the funds which came to his hands for the benefit of those entitled to them. A portion of said fund was indeed paid over shortly thereafter, and the balance appears to have been retained only because there was a dispute between the two administrators as to the amount which should be retained by appellee for commissions and attorneys' fees. To procure the determination of these matters, appellee himself filed a petition to have the correct amounts fixed by the County Court, and when

that court made an order in pursuance of such peti-
tion, he immediately paid over to appellant all of said
funds except the amount he was allowed to retain for
such commissions and fees as aforesaid. We think
the court below properly allowed the commissions to
appellee and that the amount fixed by it was reason-
able.

What is above said as to the propriety of allowing
commissions to appellee applies with equal force to
the allowance to him of his reasonable attorneys' fees,
and the only question in that behalf for us to deter-
mine is whether or not the amount allowed in the Cir-
cuit Court, which was less by $200 than the sum fixed
by the County Court, was so unreasonable as to de-
mand a reversal of the order of the Circuit Court fixing
the same. The total amount of cash received by the
administrator was $23,870.98, and the proof shows
the estate to have been in such a condition, owing to the
negligent manner in which the intestate looked after
his affairs, that a great deal of care and labor were
required to collect the amounts due it. Many of the
notes were outlawed, but steps were taken by the ad-
ministrator, through his attorneys, to collect them as
well as the other notes, if possible. Some twenty-six
suits were brought upon notes in the Circuit Court,
and ten others before a justice of the peace. Three
attorneys were employed by appellee but they were
so employed with the understanding that they would
charge but one fee for their services. The proofs show
that appellee was in frequent consultation with his
attorneys and that they were constantly rendering
service to him. A number of the attorneys of the
Marion county bar were examined as witnesses in ref-
erence to the question of what would constitute a
reasonable and the customary fee in that county for
the services rendered appellee by his attorneys. The
three attorneys who rendered these services were each
witnesses and fixed the value of their fees for the

services rendered at the sum of $2,500. Seven other attorneys fixed the fees at amounts ranging from $2,200 to $2,500. Only three witnesses were examined on this question on behalf of appellant. Two of these testified that in their opinion $1,200 would be a reasonable fee for the services rendered and the other, while his testimony was not definite, appeared to have fixed it at about the same amount. It is to be noted however that two of these witnesses for appellant were not practicing attorneys of Marion county, but each of them, while holding the office of county judge in another county, had occupied that bench in Marion county on several occasions and they did not claim in their testimony to be familiar with the usual and customary fees, in cases such as this, in Marion county. The other witness for appellant, upon this subject, stated that he had practiced law in the county about fifty years and that he knew what the usual and customary fees were in "antediluvian times," but that he supposed fees were higher now than they were when he was in the active practice of the law. The county judge who heard the proofs fixed the amount which should be allowed as the usual and customary attorneys' fees for the services rendered to appellee at $2,000. In the Circuit Court this amount was reduced to $1,800, and when we consider the period covered by these services and the extent of the services rendered, we are not prepared to say that the amount allowed for this purpose in the Circuit Court was so unreasonable as to warrant a reversal of the cause.

It is further contended by appellant that the Circuit Court erred in ordering that the costs of this proceeding be paid by appellant Roy Wilkins, as administrator, in due course of administration. We do not agree with appellant's contention in this matter, as the proceeding, so far as appellee was concerned, consisted only of the filing of his report, which was part of his duties as administrator to collect, and all appeals

therefrom were taken by appellant and certain heirs of the estate interested with him and grew out of objections filed by them. Under these circumstances, it was right that no costs should be taxed against appellee. The order and judgment of the Circuit Court in this case will be affirmed, and as the two appeals connected with the report of final settlement made by appellee have been consolidated in this court, the order of affirmance will apply to both alike.

*Affirmed.*