W. F. GARRETSON, Administrator, Appellant, v. C. H. KINKEAD, Appellee.

Conversion of Property of Decedent: ACTION TO RECOVER.   In an
1    action by a special administrator against the regular administrator for conversion of the property of decedent, no recovery can be had for property converted after the death of decedent and appointment of an administrator, but must be reached by an action for an accounting under the Code.

Evidence: CONFLICT: JURY TO DETERMINE.   Where there is conflict and uncertainty in the evidence, it is the province of the
2    jury to determine the facts.

Evidence: ADMISSIBILITY OF:   A son of decedent was asked "whether
3    or not he had ever given his father any written obligation for any sum of money".   Held, improper as calling for a personal transaction with deceased, but in view of other like testimony to which no objection was made, it is not prejudicial.

Same.   Certain evidence examined and held competent on the issue
4    of no indebtedness.

*Appeal from Linn District Court.*—HON. W. G. THOMPSON, Judge.

WEDNESDAY, OCTOBER 29, 1902.

ACTION to recover for wood and potatoes said to have been converted by the defendant, and for money loaned him by James Kinkead, plaintiff's intestate. Trial to a jury. Verdict and judgment for defendant, and plaintiff appeals. —*Affirmed*.

*Fitzgerald & Varner* for appellant.

*Voris & Haas* for appellee.

DEEMER, J.—James Kinkead, defendant's father, died in the year 1890, and defendant was appointed administrator of his estate. It is claimed that at the time of his appointment defendant was indebted to his father for money borrowed, and for other items of account, and plaintiff was appointed special administrator for the purpose of collecting these claims, and as such brought this action. The only items presented for our consideration relate to wood and potatoes and to money borrowed. As to the wood, plaintiff claims that defendant converted a large amount belonging to his father, and that he (plaintiff) should have judgment for the value thereof. It is apparent that, if the alleged conversion occurred after the death of James Kinkead, and after defendant's appointment, this is not the proper form of action in which to reach the matter. Such a claim would not be one owing to the special administrator, and for which defendant should account to him. That matter should be reached by another form of action. See Code, section 3393 *et seq.* This is not a case where defendant is alleged to have acted as an intermeddler, but one where it is claimed that he was indebted to his father at the time of the father's death. Defendant was regularly appointed administrator, and this is not a proceeding for an accounting. The only question here is, what, if anything, did he owe his father for wood or potatoes at

1. CONVERSION of property of decedent: action to recover.

the time of the father's death?   On this point there is no evidence which would justify a verdict for any amount on either of the items named.   But, treating the alleged conversions occurring after the appointment as in issue, the same result must follow, as there was not only uncertainty in plaintiff's evidence, but a conflict in the whole, which it was the province of the jury to settle; and we cannot interfere.

*2.  EVIDENCE: conflict: jury question.*

II.   As to the loan of money, it appears that defendant's father borrowed some money from one Michel, and executed a mortgage on his homestead to secure the same, which mortgage was afterwards foreclosed, and the premises sold.   It is contended that this money was procured for defendant; that he promised to repay the amount thereof, and to satisfy the mortgage; and that, having neglected to do so, he is indebted to the estate in the amount of the loan.   This defendant denies, and he also claims that he paid debts of his father amounting to much more than the loan.   It will thus be seen that there is a conflict in the evidence on this point, which it was the province of the jury to settle.   But plaintiff contends that much of the evidence adduced was incompetent, and was given by witnesses who were incompetent to testify under section 4604 of the Code.   Had proper exceptions and objections been saved to some of the evidence, there would be no doubt that a reversal should follow, but, save in a single instance, the record is such that we may not consider the point.   After defendant had been permitted to state without objection that he did not borrow any money from his father for which he (the father) had given the mortgage to Michel he was asked as to whether or not he had ever given his father any written obligation, or was asked to give any written obligation, for any sum of money.   This was objected to, as a personal transaction with the deceased.

*3.  EVIDENCE: admissability of.*

The objection was overruled, and defendant answered,. "No, sir." The objection should have been sustained, but it is manifest, we think, that there was no prejudice in the ruling. . It was not claimed by plaintiff that any notes or other writings were given, or that there had been any request for written obligations; and as the witness had already stated, without objection, that he had never borrowed any money from his father, the fact that he also stated he had given no notes to him therefor, and had never been asked to do so, added nothing to his evidence regarding the loan, and, prejudice is clearly negatived. At another time plaintiff objected to a question put to the defendant, but as the court made no ruling thereon, there is nothing to consider. Other objections were made, which were sustained, and, of course, appellant cannot complain of these rulings. Defendant was also asked as to whether or not he had paid off obligations against his father. This was objected to as immaterial, but this was also overruled.

4. SAME: ——.     The objection was not bottomed on section 4604 but on the theory, as we understand it, that no issue of payment was tendered. True, there was no such issue, but under the claims made by the respective parties the evidence was competent and material, as it tended to establish the issue of no indebtedness. Other points are argued by counsel with reference to rulings on evidence, but none except those which we have considered are properly presented by the record or by a sufficient assignment of error.

III. No complaint is made of the instructions, and, as the verdict has support in the evidence, the trial court was right in refusing to disturb it.

IV. Many of the assignments of error are faulty, but we have given plaintiff the benefit of every doubt, and considered most of them.

No prejudicial error appears, and the judgment is AFFIRMED.